## Orhegozo v. Barahona

C.P. of Berks County, no. 97-3486.

*Bernard Mendelsohn,* for plaintiff.
*Daniel I. Sager,* for defendant.
*Lisa D. Gentile,* guardian ad litem.

LASH, *J.,* June 18, 2010—This court held a custody trial regarding the petition of defendant, Edna R. Bara-

hona, to modify this court's custody order entered on December 12, 2006, requesting a change in primary custody of the parties' minor child, Starr Ashley Orbegozo, born April 17, 1994. Trial was held on June 14, 2010. We enter the following findings of fact:

## I. FINDINGS OF FACT

(1) Plaintiff, Luis Orbegozo (Father), is an adult individual who currently resides at 10 Marshall Avenue, Reading, Berks County, Pennsylvania 19606.

(2) Defendant, Edna R. Barahona (Mother), is an adult individual who currently resides at 9415 Windermere Park Circle 201, Riverview, Florida 33578, and has resided there for a little over two years.

(3) The parties are the natural parents of two children, Starr Ashley Orbegozo, born April 17, 1994, (minor child), and another child, Katherine Orbegozo, born December 12, 1996. The custody of Katherine is not at issue in the within matter.

(4) On December 12, 2006, this court, after trial held, entered an opinion and order dated December 12, 2006 providing, among other things, that the minor child would reside with Father during the school year and that Katherine would reside with Mother during the school year. The order also stated that the parties would "share custody during the summer months by splitting the time equally. This court recognizes that the school schedule may differ between Florida and Pennsylvania, so the parties should adjust accordingly to enable both of them to have equal time with the two children and to enable the two children to spend as much time with each other

as possible. Accordingly, it would be most feasible if the child whose school year ends first would travel to the home of the non-custodial parent for the first half of the summer. However, the parties can work out the schedule to their mutual satisfaction." The opinion and order of December 12, 2006 is incorporated by reference and is made a part of this decision.

(5) Father resides in the Antietam School District, Berks County, Pennsylvania.

(6) Mother currently resides in the Hillsborough County School District in the State of Florida.

(7) The minor child attended parochial school at St. Margaret's Roman Catholic School in Reading, Pennsylvania, through the 2008-2009 school year. For the 2009-2010 school year, the minor child was enrolled in public school at the Antietam School District in the Borough of Mt. Penn, Berks County, Pennsylvania.

(8) Father is employed at Lee Myles Transmission in Reading, Berks County, Pennsylvania, working Monday through Friday from 8 a.m. to 5 p.m.

(9) Mother is employed for Catholic Charities in Ruskin, Florida, with hours from Monday through Friday from 8 a.m. to 5 p.m.

(10) In addition to the minor child, Father resides with his wife, Samira. The couple has a child, Josian, born March 25, 2007.

(11) In addition to Katherine, Mother currently resides with her two children from a prior marriage to Jacob Maldonado, Shenayah Maldonado, born September 4, 1999, and Shanti Maldonado, born July 22, 2003.

(12) Mother relocated to Florida on or about October 31, 2006. Prior to that, she resided in Pottstown, since 1997.

(13) After being divorced from Father, Mother remarried for a third time, but separated from her current husband in April 2009. There is no divorce action pending.

(14) The minor child has admitted to her parents that during the past year she has engaged in the abuse of drugs and alcohol, has smoked cigarettes, has failed to attend school without permission on two occasions, and did not attend after school classes, which were scheduled to help her pass her curriculum. The minor child has flunked two subjects, English and History, and is required to either attend summer school or to make up the failed subjects in the next school year.

(15) If the minor child continues to reside with Father for the 2010-2011 school year, Father intends to enroll her at Holy Name High School, a parochial school.

(16) If the minor child resides with Mother during the 2010-2011 school year, Mother would enroll the minor child at the Spoto School District, as the State of Florida provides flexibility in choosing which school district a child will attend.

(17) Father's household provides sufficient accommodations for the minor child, who has her own bedroom.

(18) If the minor child resides with Mother, the minor child would share a bedroom and a queen size bed with her sister, Katherine. The accommodations are sufficient.

(19) On December 23, 2009, representatives of the Caron Treatment Center recommended that the minor child attend a drug and alcohol support group either at school or in the community The minor child did attend Pennsylvania Counseling Services, set-up through the assistance of her guardian ad litem. Additionally, at the request of this court, the minor child attended three counseling sessions with Sandra L. Lamma L.C.S.W., for assessment.

## II. DISCUSSION

Both parties seek primary physical custody. In making disposition, this court considered the testimony of the parties, the in camera conference with the minor child, the stipulations of the parties on the record, and the exhibits submitted by the parties, including a treatment summary from Sandra L. Lamma L.C.S.W.

The petition to modify accrued from the minor child's stated desire to relocate to Florida to reside with her Mother, and due to Mother's concerns that Father cannot control the minor child's behavior.

The minor child has made it clear to her parents and her guardian ad litem that she wants to reside with her Mother and that her behavior will improve if she is permitted to relocate to Florida. As stated, she has been involved in illicit activities, putting her at risk for potential disaster, either through addiction, teen pregnancy, or a criminal record. However, it does not appear that she has committed to this behavior, rather she is experimenting. Part of her appears to want to avoid this type of behavior.

It is Mother's position that the relocation would improve the minor child's behavior in two ways. First, the minor child would be permanently separated from her peers, who are also engaged in improper behavior and who are a negative influence. A relocation would provide a fresh start and the ability to make new friends. Separation from the negative peers while residing with Father would be more difficult because the peers would continue to try to associate with her, and the pressure and temptation would remain strong.

Additionally, Mother believes that she is more capable of providing structure for the minor child than is Father. Mother would require that the minor child advise her at all times "where she is at, who she is with, and how I can contact her." If the minor child disobeyed Mother's rules, Mother would provide appropriate sanctions. Mother's supervision would be considerable and constant. When Mother is unavailable, Mother's sister and the maternal grandmother would also be available to supervise.

Mother would also have the minor child enrolled in programs. She has looked into the Ophelia project and "Teens in Trouble," programs which alleviate pressures for teens who are at risk. ROTC may also be an option. Additionally, the minor child can be a volunteer at Mother's workplace.

In contrast, the minor child's relationship with Father has become strained. Her behavior has resulted in arguments between her and Father. He has also attempted to impose restrictions, although he generally does not follow through on enforcement. The minor child casually ignores him at will.

Within the last year, Father has imposed curfew restrictions. Additionally, there has been problems with the minor child being able to contact Mother on a cell phone or through the computer. The relationship between the minor child and stepmother was also strained. Of late, the phone calls to Mother have been resolved. Additionally, the minor child and the stepmother are getting along much better. Nevertheless, the minor child still does not respect Father's authority or rules. She does not honor her curfews and has even stayed out for the entire night.

Sandra Lamma's assessment is instructive. Ms. Lamma confirms that the minor child "readily admits" to her negative behavior and that she has learned that there are few or minimal consequences from Father when she does misbehave. Ms. Lamma recommends that wherever the minor child resides that she have constant supervision and access to therapy. She opines that: "It may be developmentally significant for [the minor child] to be with Mother as she matures. However, there is no guarantee that a move will remove the lack of self discipline that allows [minor child] to continue to make poor choices."

It is apparent that the minor child is at a crossroads. If she chooses to continue with her negative behavior, it is likely that there will be severe ramifications. At the very least, her education will continue to suffer. On the other hand, she is fairly intelligent and morally cognizant of the difference between right and wrong and what choices are the appropriate ones to make. Because of this, this court believes that the minor child will ultimately mature sufficiently to grow out of her "teenage rebellion."

Whether she straightens up prior to experiencing serious problems remains to be seen.

In any event, there is little that Father is able to do to force her into compliance. He is a good man who wants the best for his daughter, but has temporarily lost command. He blames the minor child's deterioration on her peers and states it was a mistake to allow her to attend public school during the most recent school year. While he has no objection to the minor child relocating to Florida once she has completed high school, he wants to continue to work with her to correct the problems.

Nevertheless, it appears that the only supervision to which the minor child may respond is Mother's supervision. Mother believes she can accomplish this goal. The minor child has also stated to Sandra Lamma that this is what she needs, in addition to a fresh start, to enable her to put her negative behavior behind her. Whether the minor child's behavior will change while in Mother's care remains to be seen, but this court believes that it is unlikely to change if she remains in Father's care. Further, relocation will unite the minor child with her sister, which is also beneficial.

We enter the following order:

## ORDER

And now, June 18, 2010, after trial held, the order entered December 12, 2006 by this court shall be vacated. We enter the following order:

After trial held, custody of the parties' minor children, Starr Ashley Orbegozo, born April 17, 1994, and Kath-

erine Orbegozo, born December 12, 1996, (minor children), shall be as follows:

(1) The parties shall share legal custody.

(2) Defendant, Edna R. Barahona (Mother), shall have primary custody of the minor children during the school year.

(3) The parties shall share custody during the summer months by splitting the time equally.

(4) The parties should share custody during the Christmas and spring break vacations from school. The parties shall alternate these two vacations, such that plaintiff, Luis Orbegozo (Father), should have the children for the Christmas vacation for one school year with Mother to have the spring vacation for that same school year, alternating every other year.

(5) Either party may travel to the location of the other party to visit with the children upon giving 48 hours notice.

(6) The parties shall share transportation expenses equally.

(7) Both parties shall provide unlimited access of the non-custodial parent to the children, either through telephone, or e-mail.

(8) The attached appendix shall be made a part of the within order.

---

## APPENDIX TO ORDER

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on

both parties, the breach of which could become the subject of contempt proceedings before this court, or could constitute grounds for modification of this order. If these general rules conflict with any specific provisions of the order, the order shall prevail.

(1) In addition to the foregoing rights, both parties shall also have the following rights with respect to the children:

(A) The right to reasonable telephone contact with the children when they are in the other parent's custody.

(B) The right to be fully informed concerning the progress of the children in school and the children's medical status, including the right to obtain the necessary information directly from the children's school or medical practitioner; and

(C) The right to be informed in advance before any important decisions are made concerning the children and the opportunity to participate in those decisions.

(2) In the event of any serious illness of the children at any time, any party then having custody of the children shall immediately communicate with the other party by telephone or by any other means, informing the other party as to the nature of such illness, and during such illness, each party shall have the right to visit the children as he or she desires consistent with the proper medical care of the children.

(3) Neither party shall alienate nor permit to attempt to alienate the children from the other party. While in the presence of the children, neither parent shall make any remarks or do anything which is derogatory or uncomplimentary to the other and it shall be the duty of each

parent to uphold the other parent as one the children should respect and love.

(4) Both parties shall provide each other with their addresses and telephone numbers of their residences and any time they take a trip with the children out of the jurisdiction of Berks County in excess of three days.

(5) The parties shall not conduct arguments or heated conversation when they are together in the presence of their children.

(6) The parties shall, at all times, consider the children's best interests, and act accordingly. It is in a child's best interest to understand that he or she is trying to desperately cope with the fact of his or her parents' separation, and needs help in loving both parents, rather than interference or censure

(7) Neither party shall question the children as to the personal lives of the other parent except insofar as necessary to insure the personal safety of the children. By this we mean that the children will not be used as spies on the other party. It is harmful to a child to be put in the role of spy.

(8) The parties should remember that they cannot teach their children proper moral conduct by indulging in improper conduct themselves. Children are quick to recognize hypocrisy, and the parent who maintains a double standard will lose the respect of his or her child.

(9) Weekend and evening visitation shall be subject to:

(A) Arrangements will be worked out beforehand between the parties without forcing the children to make

choices and run the risk of parental displeasure. However, the children shall be consulted as to their schedules when appropriate.

(B) Visitation rights shall be exercised at reasonable hours and under circumstances reasonably acceptable to the other party and to the need and desire of the minor children.

(C) If a party finds himself or herself unable to keep an appointment, he or she should give immediate notice to the other party, so as to avoid subjecting the children to unnecessary apprehension and failure of expectations.

(D) The party having custody of the children should prepare them both physically and mentally for the transfer of custody to the other party and have them available at the time and place mutually agreed upon.

(E) If either party or a child has plans which conflict with a scheduled visit and wish to change such visitation, the parties should make arrangements for an adjustment acceptable to the schedules of everyone involved. Predetermined schedules are not written in stone, and both parties should be flexible for the sake of the children.

(F) If a party shows up for a visit under the influence of alcohol or drugs, the visit may be considered forfeited on those grounds alone.

(10) If either party feels the other party has violated this order, they may petition the court as set forth in Pa.R.C.P. 1915.12.